

1  Darren Le Montree, Esq. (State Bar No. 198715)
   Julie E. Van Wert, Esq. (State Bar No. 166712)
2  **WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
3  555 South Flower Street, Suite 2900
   Los Angeles, California 90071
4  Telephone:  (213) 443-5100
   Facsimile:   (213) 443-5101
5  Attorneys for Defendant,
   ILLINOIS UNION INSURANCE COMPANY
6
7
8              **UNITED STATES DISTRICT COURT**
9         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10
11  JON W. BAYLESS and GARY J.          **Case 08          1778**
    MORGENTHALER, as Trustees in
12  Dissolution for WESTWAVE
    COMMUNICATIONS, INC. a dissolved )  **NOTICE OF REMOVAL OF**
13  Delaware Corporation,               **ACTION UNDER 28 U.S.C. §**
                                        **1441(B) (DIVERSITY)**
14      Plaintiffs,
15  v.
16  ILLINOIS UNION INSURANCE
    COMPANY, and DOES 1-10.
17
18      Defendants.
19  TO THE CLERK OF THE ABOVE-ENTITLED COURT:
20
21          PLEASE TAKE NOTICE that Defendant ILLINOIS UNION INSURANCE
22  COMPANY ("Illinois Union" or "Defendant") hereby removes to this Honorable
23  Court the State Court action described below.
24          1.      On January 25, 2008, Plaintiffs JON W. BAYLESS and GARY J.
25  MORGENTHALER, as Trustees in Dissolution for Westwave Communications,
26
27  Inc. ("Plaintiffs") commenced an action in the Superior Court of the State of
28

                                    1
              **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)**
    645525.1

California for the County of San Francisco, captioned *Jon W. Bayless and Gary J. Morgenthaler, as Trustees in Dissolution for Westwave Communications, Inc. a dissolved Delaware Corporation v. Illinois Union Insurance Company, and Does 1-10,* Case No. CGC08471381. A true and correct copy of the Complaint is attached hereto and incorporated herein as Exhibit "1."

2.    The first date upon which Defendant was served with a copy of the Complaint was February 1, 2008. True and correct copies of the Summons and related documents served by Plaintiff in connection with the Complaint are attached hereto and incorporated herein as Exhibit "2." On March 4, 2008, Illinois Union's counsel obtained through its attorney service a copy of Plaintiffs' Verified Petition for Appointment of Trustees in Dissolution pursuant to 8 Del. C. § 279 ("Verified Petition"). A true and correct copy of the Verified Petition is attached as Exhibit "3." As the case stated in the Complaint was not removable, receipt by Illinois Union's counsel of the Verified Petition was the first receipt of an "other paper" as contemplated by 28 USC §1446 (a) from which Illinois Union was able to ascertain that the case was removable.

3.    This is a civil action for which the U.S. District Court has original jurisdiction under 28 U.S.C. Section 1332. This action is one which may be removed to this Court by Illinois Union pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and

2

645525.1

1  the amount in controversy exceeds the sum of $75,000, exclusive of interest and

2  costs. In this action, Plaintiffs allege that Defendant breached its contractual duties

3

4  to defend and indemnify Westwave Communications, Inc. ("Westwave") in

5  connection with a derivative suit filed by, Gerald Montry, a shareholder and former

6

7  director of Westwave. In this regard, Plaintiffs allege in their Verified Petition at

8  paragraphs 6 and 7, that Westwave settled the underlying claim for $875,000 and

9  incurred $885,701 in legal fees and expense. Plaintiffs further alleged that, to

10  date, Illinois Union paid $425,000 of the Settlement Amount and $499,616.19

11

12  toward legal fees and expenses. Plaintiffs further state in the Verified petition that

13  in the instant lawsuit they are seeking the difference between what Illinois Union

14

15  has paid to date and full payment of the Settlement Amount and full payment of

16  the defense fees and expense, amounting to **$836,084.81**.

17       4.    Defendant is informed and believes that Plaintiff, Jon W. Bayless,

18

19  was, and still is, at the time of this filing, an individual who resides in and/or does

20  business in Dallas, Texas.

21       5.    Defendant is informed and believes that Plaintiff, Gary Morgenthaler

22

23  was, and still is, at the time of this filing, an individual who resides in and/or does

24  business in Cleveland, Ohio.

25

26

27

28

3

---

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)**

645525.1

1       6.    Defendant is informed and believes that Westwave was, and still is, at

2   the time of this filing, a corporation organized and existing under the laws of the

3

4   State of Delaware, with its principal place of business in Santa Rosa, California.

5       7.    Illinois Union was, and still is, at the time of this filing, a corporation

6   organized and existing under the laws of the State of Illinois, with its principal

7

8   place of business in Chicago, Illinois.

9       8.    Notwithstanding this removal, Defendant does not waive and

10  specifically reserve any and all objections, exceptions or defenses to the Complaint

11

12  herein, including but not limited to, moving to have this matter dismissed, stayed

13  and/or transferred to another court.

14  Dated: April 2 , 2008        WILSON, ELSER, MOSKOWITZ,

15                                    EDELMAN & DICKER LLP

16

17                    By: _____

18                          Darren Le Montree
                          Julie E. Van Wert

19                          Attorneys for Defendant,
                        ILLINOIS UNION INSURANCE

20                          COMPANY

21

22

23

24

25

26

27

28
                                    4

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

645525.1

1  Philip L. Pillsbury, Jr. (SBN 72261)
2  Vedica Puri (SBN 176252)
   Eric K. Larson (SBN 142791)
3  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
4  600 Montgomery Street, 31st Floor
   San Francisco, CA 94111
5  Telephone:  (415) 433-8000
   Facsimile:  (415) 433-4816
6  ppillsbury@pillsburylevinson.com
7  vpuri@pillsburylevinson.com
   rlarson@pillsburylevinson.com
8
   Attorneys for Plaintiffs
9  JON W. BAYLESS and GARY J. MORGENTHALER,
   as Trustees in Dissolution  for WESTWAVE COMMUNCATIONS, INC.
10 a dissolved Delaware Corporation



ENDORSED
FILED
San Francisco County Superior Court

JAN 25 2008

GORDON PARK-LI, Clerk
BY: CHRISTINA F. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

JUN 27 2008 -9:00 AM

DEPARTMENT 212

11          SUPERIOR COURT OF CALIFORNIA

12       IN AND FOR THE COUNTY OF SAN FRANCISCO

13

14  JON W. BAYLESS and GARY J.          )    Case No. CGC08--471381
    MORGENTHALER, as Trustees in        )
15  Dissolution  for WESTWAVE           )
    COMMUNCATIONS, INC. a dissolved     )    COMPLAINT FOR BREACH OF
16  Delaware Corporation,               )    CONTRACT AND BREACH OF THE
                                        )    IMPLIED COVENANT OF GOOD
17               Plaintiff,             )    FAITH AND FAIR DEALING
                                        )
18          vs.                         )    Jury Trial Demanded
                                        )
19  ILLINOIS UNION INSURANCE            )
20  COMPANY, and DOES 1-10.             )
                                        )
21               Defendants.            )

22

23       Plaintiffs Jon W. Bayless and Gary J. Morgenthaler, as Trustees in Dissolution for

24  Westwave Communcations, Inc. a dissolved Delaware Corporation allege as follows:

25               GENERAL ALLEGATIONS

26       1.    Plaintiff Westwave was a software company with its principal place of business

27  in Santa Rosa, California.

28

-1-

COMPLAINT
Case No.

5                    Exhibit 1

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    2.    Westwave is a former Delaware corporation which was voluntarily dissolved on

2    October 29, 2003 in accordance with and pursuant to 8 Delaware Code §275 and its winding

3    up period has expired.  Pursuant to a December 26, 2007 Order of the Court of Chancery of

4    the State of Delaware, plaintiffs Jon W. Bayless and Gary J. Morgenthaler were appointed as

5    Trustees in Dissolution for Westwave pursuant to 8 Delaware Code §279 and granted the

6    power to assert claims against Illinois Union Insurance Company ("Illinois Union").  A true

7    and correct copy of this Order is attached hereto as Exhibit A and incorporated herein by this

8    reference.

9        3.    Plaintiffs are informed and believe that at all material times defendants Illinois

10    Union and Does 1-5, inclusive, were and are corporations or other business entities authorized

11    to transact, and transacting, insurance business in the State of California.

12        4.    Plaintiffs are ignorant of the true names and capacities of the defendants sued

13    herein as Does 1-10, inclusive, and therefore sue these defendants by such fictitious names.

14    Plaintiffs are informed and believe and thereon allege that these fictitiously named defendants

15    are responsible in some manner for the events and happenings herein referred to and caused

16    injury and damages proximately thereby to plaintiff as herein alleged.  Plaintiffs are informed

17    and believe that each of the fictitiously named defendants are the agents of each other and of

18    Illinois Union.

19                    **THE DIRECTORS AND OFFICERS POLICY**

20        5.    Illinois Union issued a Directors & Officers insurance policy to Westwave

21    (Policy No. BM120003549) with a policy period of October 1, 2002 to October 1, 2003 (the

22    "D&O Policy").  The D&O Policy, comprised of several coverage forms, provides, among

23    other things, indemnity coverage to Westwave's directors and officers individually for loss

24    resulting from claims made directly against the directors and officers and indemnity coverage

25    to Westwave for losses resulting from claims made against it.  A true and correct copy of the

26    D&O Policy is attached hereto as Exhibit B and incorporated herein by reference.

27    ///

28    ///

-2-

COMPLAINT
Case No.

6

# THE UNDERLYING LITIGATION

6.    In 1998, Westwave entered into a license agreement with DSC Communications, Inc. ("DSC") to develop software to be used in DSC's products. That same year Alcatel acquired DSC and renegotiated the terms of the license agreement. Subsequently, a dispute arose between Westwave and Alcatel regarding Alcatel's performance under the license agreement. In 2003, Westwave shareholder and director Gerald Montry urged the Westwave Board of Directors ("Westwave Board") to pursue litigation against Alcatel. After investigating this option, the Westwave Board decided to pursue settlement negotiations with Alcatel.

7.    While those negotiations were ongoing, the Westwave Board held a meeting on September 30, 2003. At that meeting, Montry, in his capacity as a Westwave shareholder, accused the Westwave Board of breaching its fiduciary duties by failing to pursue litigation against Alcatel and demanded payment for this breach of approximately $250,000.

8.    That same day, by letter of September 30, 2003, Westwave's counsel Peter Werner of Cooley Godward LLP tendered Montry's claim on behalf of Westwave under the D&O Policy to Ace Professional Risk Claims ("Ace"), the company identified in the D&O Policy as the appropriate recipient of notice.

9.    On or about October 8, 2003, Ace acknowledged receipt of Westwave's tender and indicated that it was in the process of establishing a claims file.

10.    On July 30, 2004, Montry filed an action in San Mateo County Superior Court, Case No. CIV 440898, stating a complaint for breach of fiduciary duty against Westwave and its current or former directors Gary Morgenthaler, Krish Prabhu, Jon Bayless, Michael Jeye, David Ehreth and Frederick D'Alessio ("the Montry Action").

11.    Thereafter, over the course of more than 18 months, Illinois Union refused to take a position on coverage despite Westwave's repeated, increasingly urgent requests that it do so, did not respond to several potential settlement opportunities, and accordingly abandoned its insured, lost any right it may have had to control the litigation and lost its right

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-3-

COMPLAINT
Case No.

7

1    to consent to settlement or defense costs incurred, including Westwave's attorneys fees in

2    defending against the Montry Action.

3        12.    By letter of February 2, 2006, Illinois Union acknowledged its duty to defend

4    Westwave in the Montry Action and that it would reimburse Westwave's reasonable and

5    necessary fees under a reservation of rights.

6        13.    At a mediation session on February 24, 2006, Westwave settled the Montry

7    Action on reasonable terms and immediately demanded that Illinois Union (a) reimburse it for

8    its attorneys fees and costs incurred in defending the Montry Action and (b) reimburse it for

9    settlement payments made, which Illinois Union is obligated to do under the D&O Policy.

10       14.    Arbitrarily, after a long delay, and without reason or explanation, Illinois Union

11   in August 2006 reimbursed Westwave for only a portion of the settlement payments made.  In

12   October 2006, Illinois Union then arbitrarily reimbursed Westwave for only a portion of its

13   reasonable defense fees and costs incurred.

14

15                        **FIRST CAUSE OF ACTION**
                          **(Breach of Contract)**

16       15.    Plaintiffs incorporate by reference paragraphs 1 through 14 and realleges those

17   allegations as though fully set forth here.

18       16.    From October 1, 2002 to October 1, 2003, Illinois Union insured Westwave

19   under the previously described D&O Policy.

20       17.    Westwave gave Illinois Union timely notice of the claim made by Montry and

21   duly complied with all other material terms and conditions of the D&O Policy.

22       18.    Illinois Union has refused to honor its obligations to Westwave under the D&O

23   Policy to pay Westwave for all of its losses, including settlement payments and defense fees

24   and costs, resulting from the Montry Action.

25       19.    By reason of Illinois Union's wrongful conduct, Westwave has been caused to

26   suffer and will continue to suffer damages.

27   / / /

28   / / /

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-4-

COMPLAINT
Case No.

1    WHEREFORE, plaintiff prays for judgment against defendant as set forth below.

2    **SECOND CAUSE OF ACTION**
3    **(Breach of Implied Covenant of**
     **Good Faith and Fair Dealing)**

4    20.    Plaintiffs incorporate by reference paragraphs 1 through 19, and realleges those

5    allegations as though fully set forth here.

6    21.    Implied in each insurance policy is a covenant by the insurer that it will act in

7    good faith and fair dealing with its insured; that it will do nothing to interfere with the right of

8    its insured to receive the benefits of the policy; that it will give at least as much consideration

9    to the interests of its insured as it gives to its own interests; that it will investigate all possible

10   bases for coverage; and that it will not deny a claim without thoroughly investigating the

11   foundation for the denial and at all times deal in good faith with its insured (hereinafter

12   referred to as "the implied covenant of good faith and fair dealing.")

13   22.    At all material times herein, Illinois Union has violated its implied covenant of

14   good faith and fair dealing by, *inter alia*, the following.

15   (a)    Consciously and unreasonably refusing to pay Westwave benefits to which it is

16          entitled pursuant to the D&O Policy, and depriving Westwave of its rightful

17          benefits with the knowledge that said denials were and are wrongful and

18          contrary to Illinois Union's obligation under the D&O Policy and the law;

19   (b)    Consciously and unreasonably failing to properly investigate the losses suffered

20          by Westwave fairly and in good faith and refusing to give Westwave's interests

21          at least as much consideration as Illinois Union gave its own interests;

22   (c)    Consciously and unreasonably failing to participate in settlement discussions or

23          respond to settlement opportunities.

24   (d)    Consciously and unreasonably delaying in, then refusing to make full and

25          complete payments to Westwave for its losses with the intent of saving itself

26          money at Westwave's expense;

27   (e)    Consciously and unreasonably denying full payment of benefits without

28          thoroughly investigating the foundation for its denial; and

-5-

COMPLAINT
Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

(f)    Consciously and unreasonably embarking on an interpretation of the facts and policy provisions calculated to deprive Westwave of full payment of the benefits due it under the D&O Policy when Illinois Union knew that Westwave was and is entitled to full payment.

23.    Plaintiffs are informed and believe and thereon allege that the aforementioned conduct is a common pattern and practice on the part of Illinois Union with regard to the manner in which it treats its insureds.

24.    Plaintiffs are informed and believe and thereon allege that in taking such actions, Illinois Union acted with malice, fraud and/or oppression as defined in California Civil Code §3294.

25.    As a proximate result of Illinois Union's actions, Westwave has been caused to suffer and will continue to suffer substantial prejudice and damages.

26.    As a further proximate result of Illinois Union's actions, Westwave has incurred, and will continue to incur, attorneys' fees and related costs to obtain the policy benefits Illinois Union has withheld.

27.    As a result of Illinois Union's conduct, as alleged herein, Westwave is entitled to recover its damages, including attorneys' fees and expenses, and to claim and recover punitive damages from Illinois Union in amounts sufficient to punish and make an example of Illinois Union in order to deter such conduct in the future.

WHEREFORE, plaintiffs pray for judgment against defendant as follows:

1.    For special damages against Illinois Union according to proof;

2.    For general and compensatory damages from Illinois Union according to proof;

3.    For exemplary damages against Illinois Union according to proof;

4.    For attorneys' fees incurred in obtaining policy benefits;

5.    For costs of suit incurred herein;

6.    For prejudgment interest; and

7.    For such other and further relief that the court may deem just and proper.

///

-6-

COMPLAINT
Case No.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

## JURY DEMAND

2        Plaintiff Westwave hereby demands a trial by jury.

3

4    Dated:   January 25, 2008                 PILLSBURY & LEVINSON, LLP

5

6                                    By: _____
                                         Philip L. Pillsbury, Jr.
7                                        Vedica Puri
                                         Eric K. Larson
8

9                                    Attorneys for Plaintiffs
                                     JON W. BAYLESS, GARY J.
10                                   MORGENTHALER, as Trustees in
                                     Dissolution  for WESTWAVE
11                                   COMMUNCATIONS, INC. a dissolved
                                     Delaware Corporation
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-7-

COMPLAINT
Case No.

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE: WESTWAVE COMMUNICATIONS,<br>INC., a dissolved Delaware corporation. | )<br>)<br>)<br>)<br>)<br>) |
| | Civil Action No. 3401-CC |

## ORDER

The Court having considered the Verified Petition for Appointment of Trustees in Dissolution Pursuant to 8 *Del. C.* § 279, and it appearing from the Verified Petition that:

(a)    Westwave Communications, Inc. ("Westwave") is a former Delaware corporation which was voluntarily dissolved on October 29, 2003, in accordance with and pursuant to 8 *Del. C.* § 275;

(b)    Westwave's winding-up period has expired pursuant to 8 *Del. C.* § 278; and;

(c)    It is necessary and appropriate under the circumstances to appoint Trustees in Dissolution for Westwave for limited purpose set forth in the Verified Petition;

NOW, THEREFORE, IT IS ORDERED, this 26th day of December, 2007 that:

1.    Jon W. Bayless and Gary J. Morgenthaler are appointed as Trustees (the "Trustees") in Dissolution for Westwave pursuant to 8 *Del. C.* § 279, either of whom shall have and may exercise all of the powers of the Trustees without the need to consult with the other before exercising such powers, for the purpose of taking such actions, in accordance with the Verified Petition, as are necessary or appropriate to assert claims against Illinois Union to enforce payment of policy benefits;

2

12

2.    Pursuant to Rule 148 of the Rules of this Court, Rules 149 through 168 shall not be applicable to this proceeding. Instead, the Trustees shall, within one year of their appointment, file with this Court a report stating that they have completed the actions set forth in paragraph 1 hereof or, if they have not done so, setting forth the reason(s) therefor; and

3.    The Trustees shall be discharged and this case shall be dismissed thirty (30) days following the filing of the Trustees' report as referred to in paragraph 2 hereof, unless the Trustees or any other interested person shall petition the Court within the thirty-day period following the filing of the Trustees' report, showing good cause why the Trustees should not be discharged and the case dismissed.

_William S Chandler_
Chancellor

3

13





**Illinois Union Insurance Company**

This Policy is issued by the stock insurance company listed above (herein "Insurer").

## DECLARATIONS

EACH OF THE COVERAGE SECTIONS OF THIS POLICY (EMPLOYMENT PRACTICES, DIRECTORS & OFFICERS AND COMPANY, FIDUCIARY, TECHNOLOGY, MEDIA AND PROFESSIONAL SERVICES AND MISCELLANEOUS PROFESSIONAL SERVICES, WHICHEVER ARE APPLICABLE) IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS. EXCEPT AS OTHERWISE PROVIDED, THESE COVERAGE SECTIONS COVER ONLY ANY CLAIM FIRST MADE AND REPORTED AGAINST THE INSURED DURING THE POLICY PERIOD. THE CRIME COVERAGE SECTION, IF APPLICABLE, APPLIES ONLY TO LOSS OCCURRING DURING THE POLICY PERIOD.

Policy Number:             BMI20003549

Item A.    Parent Company:          *Westwave Communications, Inc.* ✓
           Principal Address:        463 Aviation Boulevard ✓
                                      Santa Rosa, CA  95403 ✓

Item B.    Policy Period:       From: October 1, 2002 ✓    To: October 1, 2003   ✓
                                12:01 a.m. Standard Time at the Principal Address Stated in Item A.

Item C.    Coverage Section Description(s):

           **Employment Practices**

           a)  Limit of Liability       $1,000,000 ✓     in the aggregate for this Coverage Section
           b)  Retention                $0 ✓             each Claim for all Insured Persons
                                         $50,000 ✓        each Claim for the Company
           c)  Continuity Date          November 1, 2000 ✓

           **Directors & Officers and Company**

           a)  Limit of Liability       $2,000,000 ✓     in the aggregate for this Coverage Section
           b)  Retention                $0 ✓             each Claim all Directors and Officers under Insuring
                                                          Clause 1.
                                         $25,000 ✓        each Claim under Insuring Clause 2.
                                         $25,000 ✓        each Claim under Insuring Clause 3.
           c)  Continuity Date ✓        November 14, 2000   for any *Loss* payable as respects the first $1,000,000 of the
                                                          above Limit of Liability.
                               ✓         October 1, 2002    for any *Loss* payable as respects the above Limit of Liability
                                                          in excess of $1,000,000.

BAM 02/02                        DEC-1

14

**Fiduciary**

a) Limit of Liability    $1,000,000 ✓    in the aggregate for this Coverage Section

b) Retention    $0 ✓    each Claim all Insured Persons
               $0 ✓    each Claim for all Insureds other than Insured Persons

c) Continuity Date    November 14, 2000    ✓

**Crime**
**Employee Benefit Plan Coverage**    Yes ✓    No _____

a) Limit of Liability    $1,000,000 ✓    in the aggregate for this Coverage Section

b) Deductible    $1,000 ✓    each Claim
               $0 ✓    each Claim for Employees Benefit Plan Coverage

Item D.    Premium:    **$39,514** ✓

Item E.    1.    Premium for **Discovery Period:** 100% of the total premium, as provided in Clause H, 1. of the General Terms and Conditions.

         2.    Length of **Discovery Period:** 365 Days

Item F.    Insured Percentage:    100% of **Loss** in excess of any applicable retention.

Item G.    Notification under the Policy shall be given to:    ACE Professional Risk Claims
                                                      140 Broadway, 40th Floor
                                                      New York, NY 10005

Item H.    Form Numbers of Endorsements Attached at Policy Issuance: GT&C102, D&O120

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Secretary and countersigned by a duly authorized representative of the Insurer.**

*Dennis B Reding*
Dennis B. Reding, President

*George D Mulligan*
GEORGE D. MULLIGAN, Secretary

DATE:    December 3, 2002

*Paul Tom*
**AUTHORIZED REPRESENTATIVE**

## GENERAL TERMS AND CONDITIONS

A.  **SEVERABILITY OF GENERAL TERMS AND CONDITIONS**

Except for the General Terms and Conditions below or unless stated to the contrary in any Coverage Section, the terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

B.  **DEFINITIONS**

The following terms, whenever used in this Policy (including each Coverage Section) in boldface type, shall have the meanings indicated.

1.  **Application** means:

    a)  the application for this Policy or any policy of which this Policy is a renewal, and

    b)  any materials submitted therewith, which shall be retained on file by Insurers and shall be deemed attached hereto, as if physically attached hereto.

2.  **Company** means:

    a)  the Parent Company, and

    b)  any Subsidiary.

3.  **Takeover** means:

    a)  the acquisition by any person or entity of more than 50% of the outstanding securities of the Parent Company representing the present right to vote for the election of directors,

    b)  the merger of the Parent Company into another entity such that the Parent Company is not the surviving entity, and

    c)  the Parent Company ceasing to be publicly-held.

4.  **Discovery Period** means the period described in Item E.2. of the Declarations and Clause H. below.

5.  **Parent Company** means the entity named in Item A. of the Declarations.

6.  **Policy Period** means the period from the effective date and hour of the inception of this Policy to the Policy expiration date and hour as set forth in Item B. of the Declarations, or its earlier cancellation date and hour, if any, or the end of the Discovery Period, if purchased.

7.  **Subsidiary** means any entity while more than 50% of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the Parent Company, directly or indirectly, if such entity:

    a)  was so-owned prior to the inception date of this Policy and was insured under a Policy issued by Insurer of which this Policy is a renewal,

    b)  was so owned on the inception date of this Policy, or

    c)  becomes so owned after the inception date of this Policy.

Other definitions particular to each Coverage Section are contained in the separate Definitions Clause in each Coverage Section.

C.  **LIMITS OF LIABILITY AND RETENTIONS**

The Limits of Liability and Retentions for each Coverage Section are separate Limits of Liability and Retentions pertaining to the Coverage Section for which they are shown.  The application of a retention to Loss under one Coverage Section shall not reduce the retention under any other Coverage Section, and no reduction in the Limit of Liability applicable to one Coverage Section shall reduce the Limit of Liability under any other Coverage Section.

In the event that any Claim or more than one Claim arising from Interrelated Wrongful Acts shall be covered, in whole or in part, under two or more Insuring Clauses or more than one Coverage Section, the total applicable Retention shall not exceed the single largest applicable Retention.  Such largest applicable Retention shall apply only once to such Claim.

D.  **WARRANTY CLAUSE**

It is warranted that the particulars and statements contained in the Application, a copy of which is attached hereto, are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy and of each Coverage Section.

By acceptance of this Certificate, the Insureds agree:

1.  that the statements in the Application are their representations, that they shall be deemed material to the acceptance of the risk or the hazard assumed by Insurer under this Policy and that this Policy and each Coverage Section are issued in reliance upon the truth of such representations,

2.  that in the event the Application contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Insurer under this Policy, this Policy and each and all Coverage Sections shall be void and of no effect whatsoever with respect to any of the Insureds who had actual knowledge of such misrepresentations, and

3.  that this Policy and each Coverage Section shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts with each or all of the Insureds.

16

E.   CANCELLATION CLAUSE

1.   By acceptance of this Certificate, the Insureds hereby confer the exclusive power and authority to cancel this Policy on their behalf to the Parent Company. Such entity may cancel this Policy by surrender thereof to Insurer, or by mailing to Insurer written notice stating when thereafter cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice shall be equivalent to mailing.

2.   This Policy may only be cancelled by Insurer for nonpayment of premium by mailing to the Parent Company written notice stating when, not less than 10 days thereafter, such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Delivery of such written notice by Insurer shall be equivalent to mailing. If the foregoing notice period is in conflict with any governing law or regulation, then such period shall be amended to afford the minimum notice period permitted there under.

3.   If this Policy is cancelled, Insurer shall retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by Insurer shall not be a condition precedent to the effectiveness of cancellation.

F.   SPOUSAL EXTENSION

Insurer agrees to extend coverage under each Coverage Section to all persons who were, now are, or shall be the lawful spouse of any natural person who is one of the Insureds solely to the extent such spouse is the subject of any Claim because of marriage to any such natural person Insured.

G.   COMPANY AUTHORIZATION CLAUSE

By acceptance of this Certificate, the Insureds agree that the Parent Company will act on their behalf with respect to the giving of all notice to Insurer, the receiving of notice from Insurer, the payment of the premium and the receipt of any return premium.

H.   DISCOVERY PERIOD

1.   If this Policy is cancelled pursuant to Clause E.1, or if Insurer refuses to renew this Policy for reasons other than non-payment of premium or noncompliance with the terms and conditions of this Policy or if the Parent Company elects not to renew this Certificate, then the Parent Company shall have the right, upon payment of an additional premium calculated at that percentage shown in Item E.1 of the Declarations of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to any Claim first made during the period of time set forth in Item E.2 of the Declarations after the effective date of such cancellation or, in the event of such refusal to renew, after the Policy expiration date, but only with respect to any Wrongful Act committed before such date.

2.   The quotation of a different premium, retention or limit of liability for renewal does not constitute a cancellation or refusal to renew for the purposes of this Clause.

3.   As a condition precedent to the right to purchase the Discovery Period, the total premium for the Policy must have been paid. The right to purchase the Discovery Period shall terminate unless written notice, together with full payment of the premium for the Discovery Period, is received by Insurer within 30 days after the effective date of cancellation, or, in the event of a refusal to renew, within 30 days after the Policy expiration date. If such notice and premium payment is not so given to Insurer, there shall be no right to purchase the Discovery Period.

4.   In the event of the purchase of the Discovery Period, the entire premium therefore shall be deemed earned at its commencement.

5.   The exercise of the Discovery Period shall not in any way increase the limit of Insurer's liability under any Coverage Section.

I.   RUN-OFF COVERAGE

In the event of a Takeover:

1.   The Parent Company shall have the right, upon payment of an additional premium calculated at 125% of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to any Claim first made during the period of six calendar years after the effective date of the Takeover, but only with respect to any Wrongful Act committed before such date; provided, however, that the additional premium shall be reduced by the amount of the unearned premium from the date of the Takeover through the expiration date set forth in Item B. of the Declarations.

2.   If this extension of coverage is elected and purchased then:

a)   Clause E., above, is deleted in its entirety, and

b)   Clause H., above, is deleted in its entirety, and

c)   the maximum aggregate Limit of Liability of Insurers under this Policy for this extension of coverage shall be an amount twice that shown in Item C. of the Declarations for each Coverage Section. The maximum aggregate Limit of Liability of Insurer in connection with any one Claim shall be the amount shown in Item C. of the Declarations relating to that Coverage Section and subject to the Limit of Liability and Retentions Clause of each Coverage Section.

J.   ALLOCATION

In the event any of the Insureds in a Claim incur both Loss that is covered by the Policy and also loss which is not covered by this Policy, either because such Claim includes both covered and uncovered matters or because such Claim is made against both covered and uncovered parties, then coverage will be allocated as follows:

1.   100% of Costs, Charges and Expenses incurred by such Insureds on account of such Claim will be allocated as covered Loss, and

2.   any remaining loss incurred by such Insureds on account of such Claim will be allocated by the parties between covered Loss and uncovered loss using all reasonable efforts based upon the legal liabilities of each of the parties to such matters.

17

K. ARBITRATION

Any dispute between the Insureds and Insurers arising in connection with or relating to this Policy shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association ("AAA") then in effect, except that the arbitration panel shall consist of one arbitrator selected by the Insureds, one arbitrator selected by Insurers, and a third independent arbitrator selected by the first two arbitrators.

L. SETTLEMENTS AND DEFENSE

1. No settlement shall be made or negotiated and no Costs, Charges and Expenses shall be incurred without Insurer's consent, such consent not to be unreasonably withheld. Insurer shall have the right to investigate and settle any Claim; provided however, no settlement shall be made without the consent of the Parent Company, such consent not to be unreasonably withheld.

2. Insurer shall have the right and duty to defend any Claim and such right and duty shall exist even if any of the allegations are groundless, false or fraudulent. The Parent Company shall have the right to assume the duty to defend any Claim provided Insurers consent in writing to such assumption. Costs, Charges and Expenses incurred by Insurer, or by the Insureds when defending or investigating with the written consent of Insurer, shall be paid by Insurer as a part of, and not in addition to, Insurer's Limit of Liability set forth in Item C. of the Declarations for the applicable Coverage Section.

M. ASSISTANCE, COOPERATION AND SUBROGATION

The Insureds agree to provide Insurer with such information, assistance and cooperation as Insurer reasonably may request, and they further agree that they shall not take any action which in any way increases Insurer's exposure under this Policy.

In the event of any payments under this Policy, Insurer shall be subrogated to the Insureds' rights of recovery therefore against any person or entity. The Insureds shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as necessary to enable Insurer effectively to bring suit in their name, and shall provide all other assistance and cooperation which Insurer may reasonably require.

N. ASSIGNMENTS AND ACTIONS AGAINST INSURERS

No action shall lie against Insurers unless, as a condition precedent thereto, the Insureds shall have fully complied with all of the terms of this Policy, nor until the amount of the Insureds' obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and Insurer. Nothing contained herein shall give any person or organization any right to join Insurer as a party to any Claim against the Insureds to determine their liability, nor shall Insurer be impleaded by the Insureds or their legal representative in any Claim. Assignment of Interest under this Policy shall not bind Insurers unless their consent is endorsed hereon.

O. ENTIRE AGREEMENT

By acceptance of this Certificate, the Insureds agree that this Policy embodies all agreements existing between them and Insurers or any of their agents relating to this Insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of Insurers shall not effect a waiver or a change in any part of this Policy or estop Insurers from asserting any right under the terms of this Policy, nor shall the terms be deemed waived or changed except by written endorsement or rider issued by Insurer to form part of this Policy.

P. SERVICE OF SUIT

It is agreed that in the event of the failure of Insurer to pay any amount claimed to be due hereunder, Insurer, at the request of any person or entity Insured hereunder, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. Nothing in this Clause constitutes or should be deemed to constitute a waiver of Insurer's right to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court, as permitted by the laws of the United States or of any state, territory, or district in the United States. It is further agreed that service of process in such suit may be made upon ACE Professional Risk Claims, 140 Broadway, 40th Floor, New York, NY 10005 and that in such suit instituted against any one of them upon this Policy, Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

The above-named party is authorized and directed to accept service on behalf of Insurers in any such suit upon the request of any person or entity to enter a general appearance on behalf of Insurers in the event such a suit shall be instituted.

Further, pursuant to the applicable statute of any state, territory or district of the United States, Insurer shall designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute or any successor in office, as Insurer's true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any person or entity insured hereunder or any beneficiary hereunder arising out of this Certificate, and hereby designate ACE Professional Risk Claims, 140 Broadway, 40th Floor, New York, NY 10005 as the party to whom such officer is authorized to mail such process.

EMPLOYMENT PRACTICES COVERAGE SECTION

In consideration of the payment of premium, in reliance on the statements in the Application and subject to all of the provisions of the Policy and this Coverage Section, Insurers and the Insureds agree as follows.

A.    INSURING CLAUSE

Insurers shall pay on behalf of the Insureds Loss resulting from any Claim first made during the Policy Period for a Wrongful Act.

B.    DEFINITIONS

The following terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated. Other terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated in Clause B. of the General Terms and Conditions section of this Policy.

1.    Insureds means the Company and any Insured Persons.

2.    Insured Persons means all persons who were, now are or shall be:

   a)    the directors and officers of the Company,

   b)    any Employees, and

   c)    the functional equivalent of directors, officers and Employees in the event the Company is incorporated or domiciled outside the United States, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

3.    Benefits means perquisites, fringe benefits, and payments in connection with an employee benefit plan and other payment, other than salary or wages, to or for the benefit of an employee arising out of the employment relationship.

4.    Claim means:

   a)    any written or oral demand for damages or other relief against any of the Insureds, and

   b)    any judicial, administrative or arbitration proceeding initiated against any of the Insureds in which they may be subjected to a binding adjudication of liability for damages or other relief, including:

      (i)    any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, and

      (ii)   any appeal therefrom.

   brought by or on behalf of an Employee.

5.    Continuity Date means the date set forth in Item C. of the Declarations relating to this Coverage Section.

6.    Costs, Charges and Expenses means reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense of any Claim and cost of attachment or similar bonds, but shall not include:

   a)    salaries, wages, overhead or benefit expenses associated with officers or employees of the Company, or

   b)    any amounts incurred in defense of any Claim for which any other Insurer has a duty to defend.

7.    Employees means all persons who were, now are or shall be:

   a)    employees of the Company, including voluntary, seasonal and temporary employees,

   b)    any individuals applying for employment with the Company, and

   c)    any individuals who are leased or are contracted to perform work for the Company, or are independent contractors for the Company, but only if such individuals perform work or services solely for or on behalf of the Company.

8.    Interrelated Wrongful Acts means more than one Wrongful Act which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

9.    Loss means damages, settlements, including front pay and back pay, and Costs, Charges and Expenses incurred by any of the Insureds, but shall not include:

   a)    taxes, criminal or civil fines or penalties imposed by law, or

   b)    matters deemed uninsurable under the law pursuant to which this Policy shall be construed, or

   c)    punitive or exemplary damages, except to the extent such damages are insurable under the law pursuant to which this Policy shall be construed or the law of the jurisdiction in which such damages are awarded, whichever legal venue is most favorable for the Insureds in deciding the insurability of such damages, or

   d)    non-monetary relief, or

   e)    amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract, or

EPL-1

    f)    disability, social security, workers compensation, medical insurance, retirement or pension benefits, or settlement amounts representing benefit payments, or

    g)    the costs to modify or adapt any building or property to be more accessible or accommodating to any disabled person, or

    h)    the cost of instituting or conducting any program, procedure, or training, or

    i)    the cost of instating or reinstating employment.

10.    **Retaliation** means any actual or alleged response of any of the Insureds to:

    a)    the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by any of the Insureds where such act is alleged to be a violation of any federal, state local or foreign law, whether common or statutory, or any rule or regulation promulgated there under, or

    b)    the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under any worker's compensation law, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights, or

    c)    the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower" law, or

    d)    any Employee work stoppage or slowdown.

11.    **Wrongful Act** means any actual or alleged:

    a)    violation of any federal, state, local or common law, prohibiting any kind of employment-related discrimination, or

    b)    harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment and including workplace harassment by any non-employee, or

    c)    abusive or hostile work environment, or

    d)    wrongful discharge or termination of employment, whether actual or constructive, or

    e)    breach of an actual or implied employment contract, or

    f)    wrongful failure or refusal to hire or promote, or wrongful demotion, or

    g)    wrongful failure or refusal to provide equal treatment or opportunities, or

    h)    defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy, or

    i)    wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures, or

    j)    wrongful, excessive or unfair discipline, or

    k)    wrongful infliction or emotional distress, mental anguish, or humiliation, or

    l)    Retaliation, or

    m)    negligent hiring or negligent supervision of others in connection with a) through l) above, but only if employment related and claimed by or on behalf of any Employee and only if committed or allegedly committed by any of the Insureds in their capacity as such.

**C.    EXCLUSIONS**

Insurers shall not be liable to make any payment under this Coverage Section in connection with any Claim:

1.    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a)    any Wrongful Act or any fact, circumstance or situation which has been the subject to any notice given prior to the Policy Period under any other similar insurance policy, or

    b)    any other Wrongful Act, whenever occurring, which, together with a Wrongful Act which has been the subject of such prior notice, would constitute Interrelated Wrongful Acts;

2.    to the extent it is insured under any other existing valid policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any Loss in connection with such Claim is collectible or recoverable under such other policy; provided, however, this exclusion shall not apply to the amount of Loss which is in excess of the amount of any deductible and the limit of liability of such other policy where such Claim is otherwise covered by this Coverage Section;

3.    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended, or any rules or regulations promulgated there under, or similar provisions of any federal, state or local statutory or common law; provided, however, this exclusion does not apply to any such Claim alleging violations of the Equal Pay Act, or for Retaliation;

4.    brought about or contributed to by any dishonest, fraudulent or criminal act or omission as determined by a judgment or other final adjudication;

5.    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged obligation of any of the Insureds pursuant to any workers compensation, unemployment insurance, social security, disability benefits or similar law; provided, however, this exclusion shall not apply to any such Claim for Retaliation;

6.  against any Subsidiary or any of the Insured Persons of a Subsidiary based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a)  any Wrongful Act occurring prior to the date such entity became a Subsidiary or subsequent to the date such entity ceased to be a Subsidiary, or

    b)  any Wrongful Act occurring while such entity was a Subsidiary which, together with a Wrongful Act occurring prior to the date such entity became a Subsidiary would constitute Interrelated Wrongful Acts;

7.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act actually or allegedly committed subsequent to a Takeover;

8.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

    a)  any  prior and/or pending litigation or administrative proceeding, demand letter or formal or informal governmental investigation or inquiry including any investigation by the Department of Labor or the Equal Employment Opportunity Commission as of the Continuity Date, or

    b)  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative proceeding, demand letter or formal or informal governmental investigation or inquiry including any investigation by the Department of Labor or the Equal Employment Opportunity Commission;

9.  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act which any of the Insured Persons who were, now are, or shall be directors, officers, managers or supervisory employees, had knowledge of prior to the Continuity Date where such Insured Persons had reason to believe at the time that such known Wrongful Act could reasonably be expected to give rise to such Claim; or

10.  for that portion of Loss which is covered under any other Coverage Section of this Policy.

No Wrongful Act of one or more Insureds shall be imputed to any other Insureds for the purpose of determining the applicability of the above Exclusions.

D.  LIMIT OF LIABILITY AND RETENTIONS

1.  Insurer shall be liable to pay the percentage of Loss set forth in Item F. of the Declarations relating to this coverage section in excess of the amount of the Retention up to the Limit of Liability under this Coverage Section, it being warranted that the remaining percentage of Loss shall be uninsured.  In the event a Claim is made against both the Company and any of the Insured Persons, the largest retention identified in Item C. of the Declarations for this Coverage Section shall apply.

2.  The amount shown in Item C. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of Insurer under this Coverage Section.

3.  More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the following times:

    a)  the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made, or

    b)  the time at which the Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to have been made pursuant to Clause E.2., below.

4.  Payments of Loss by Insurers shall reduce the Limit of Liability under this Coverage Section.

5.  Insurer shall pay Costs, Charges and Expenses no more than once every 90 days.

E.  NOTIFICATION

1.  The Insureds shall, as a condition precedent to their rights to payment under this Coverage Section only, give to Insurers notice in writing of any written Claim as soon as practicable but in no event later than sixty (60) days after such Claim is first made.

2.  If, during the Policy Period or the Discovery Period, any of the Insureds first becomes aware of a specific Wrongful Act and if the Insureds, during the Policy Period or the Discovery Period, if purchased, given written notice to Insurer as soon as practicable of:

    a)  the specific Wrongful Act, and

    b)  the consequences which have resulted or may result therefrom, and

    c)  the circumstances by which the Insureds first become aware thereof,

then any Claim made subsequently arising out of such Wrongful Act shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was first given to Insurer.

3.  Notice to Insurer shall be given to the firm shown under Item G. of the Declarations for this Policy.

## ...ECTORS & OFFICERS AND COMPANY
## COVERAGE SECTION

In consideration of the payment of premium, in reliance on the statements in the Application and subject to all of the provisions of the Policy and this Coverage Section, Insurer and the Insureds agree as follows:

**A.    INSURING CLAUSES**

1.    Insurer shall pay on behalf of the Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Policy Period for a Wrongful Act.

2.    Insurer shall pay on behalf of the Company Loss which the Company is required or permitted to pay as indemnification to any of the Directors and Officers resulting from any Claim first made against the Directors and Officers during the Policy Period for a Wrongful Act.

3.    Insurer shall pay on behalf of the Company Loss resulting from any Claim first made against the Company during the Policy Period for a Wrongful Act.

**B.    DEFINITIONS**

The following terms whenever used in this Coverage Section in boldface type, shall have the meaning indicated. Other terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated in Clause B. of the General Terms and Conditions section of this Policy.

1.    Insureds mean the Company and the Directors and Officers.

2.    Claim means:

   a)    any written or oral demand for damages or other relief against any of the Insureds, and

   b)    any judicial, administrative or arbitration proceeding initiated against any of the Insureds in which they may be subjected to a binding adjudication of liability for damages or other relief, including any appeal therefrom.

3.    Continuity Date means the date set forth in Item C. of the Declarations relating to this Coverage Section.

4.    Costs, Charges and Expenses means reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense of any Claim and cost of attachment or similar bonds, but shall not include:

   a)    salaries, wages, overhead or benefit expenses associated with officers or employees of the Company, or

   b)    any amounts incurred in defense of any Claim for which any other Insurer has a duty to defend.

5.    Directors and Officers means all persons who were, now are, or shall be:

   a)    directors, officers or employees of the Company; and

   b)    the functional equivalent to directors or officers of the Company in the event the Company is incorporated or domiciled outside the United States,

   including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

6.    Interrelated Wrongful Acts means more than one Wrongful Act which have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.

7.    Loss means damages, settlements and Costs, Charges and Expenses incurred by any of the Directors and Officers under Insuring Clauses 1. or 2., and the Company under Insuring Clause 3., but shall not include:

   a)    that portion of any multiplied damages awarded which exceeds the amount multiplied,

   b)    taxes, criminal or civil fines or penalties imposed by law, or

   c)    matters deemed uninsurable under the law pursuant to which this Policy shall be construed, or

   d)    punitive or exemplary damages, except to the extent such damages are insurable under the law pursuant to which this Policy shall be construed or the law of the jurisdiction in which such damages are awarded, whichever legal venue is most favorable for the Insureds in deciding the insurability for such damages, or

   e)    the costs to modify or adapt any building or property to be more accessible or accommodating to any disabled person, or

   f)    any amounts owed or paid to one or more securities holders of the Company under any written or express contract or agreement.

8.    Outside Entity means:

   a)    any non-profit organization which is exempt from taxation under the Internal Revenue Code (as amended), and

   b)    any for-profit organization specifically identified by endorsement to this Policy.

22

9.  Wrongful Act means any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by:

    a)  any of the Directors and Officers, while acting in their capacity as:

        (i)  a director, officer or employee of the Company or the functional equivalent to a director or officer of the Company in the event the Company is incorporated or domiciled outside the United States; and

        (ii)  a director, officer, trustee, governor, executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Company; and

    b)  with respect to Insuring Clause 3. of this Coverage Section only, the Company.

## C.  EXCLUSIONS

1.  Insurer shall not be liable to make any payment under this Coverage Section in connection with any Claim:

    a)  for actual or alleged libel, slander, defamation, bodily injury, sickness, disease, death, false arrest, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy, or damage to or destruction of tangible property, including loss of use thereof;

    b)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

        (i)  any Wrongful Act or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period under any other similar insurance policy, or

        (ii)  any other Wrongful Act, whenever occurring, which together with a Wrongful Act which has been the subject of such prior notice, would constitute Interrelated Wrongful Acts;

    c)  to the extent it is insured under any other existing valid policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any Loss in connection with such Claim is collectible or recoverable under such other policy; provided, however, this exclusion shall not apply to the amount of Loss which is in excess of the amount of any deductible and the limit of liability of such other policy where such Claim is otherwise covered by this Coverage Section;

    d)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving actual or alleged seepage, pollution or contamination of any kind; provided, however, this exclusion shall not apply to any Claim brought directly, derivatively or otherwise by one or more securities holders of the Company;

    e)  for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law;

    f)  by, on behalf of, or at the direction of any of the Insureds, except to the extent such Claim:

        (i)  is brought derivatively by a security holder of the Company who, when such Claim is first made, is acting independently of all of the Insureds,

        (ii)  is brought by any of the Insureds in the form of a cross-claim, third party claim or other proceeding for contribution or indemnity which is part of and results directly from a Claim not otherwise excluded by the terms of this Coverage Section, or

        (iii)  is brought by an employee of the Company who is not or was not a director or officer of the Company and where such Claim is brought by such employee only in their capacity as a security holder of the Company;

    g)  brought about or contributed to by:

        (i)  any dishonest, fraudulent or criminal act or omission by any of the Insureds, or

        (ii)  any personal profit by any of the Directors and Officers to which they were not legally entitled,

    as determined by a judgment or other final adjudication;

    h)  for the return by any of the Directors and Officers of any remuneration paid to them without the previous approval of the appropriate governing body of the Company or Outside Entity, which payment without such previous approval shall be held by a court to be in violation of law;

    i)  against any of the Directors and Officers of any Subsidiary or against any Subsidiary based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

        (i)  any Wrongful Act occurring prior to the date such entity became a Subsidiary or subsequent to the date such entity ceased to be a Subsidiary, or

        (ii)  any Wrongful Act occurring while such entity was a Subsidiary which, together with a Wrongful Act occurring prior to the date such entity became a Subsidiary, would constitute Interrelated Wrongful Acts;

    j)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act actually or allegedly committed subsequent to a Takeover;

    k)  to the extent such Claim is based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the service of any of the Directors and Officers in any position or capacity in any entity other than the Company; provided, however, that this exclusion shall not apply to Loss resulting from any such Claim to the extent that:

        (i)  such Claim is based on the service of any of the Directors and Officers as a director, officer, trustee, governor, executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Company, and

      (ii)   such Outside Entity is not permitted or required by law to provide indemnification to such Directors and Officers, and

      (iii)   such Loss is not covered by insurance provided by any of the Outside Entity's Insurer;

  l)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      (i)   any prior and/or pending litigation as of the Continuity Date, or

      (ii)   any fact, circumstance, situation, transaction or event underlying or alleged in such litigation,

  regardless of the legal theory upon which such Claim is predicated;

  m)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act which any of the Insureds had knowledge of prior to the Continuity Date where such Insureds had reason to believe at the time that such known Wrongful Act could reasonably be expected to give rise to such Claim;

  n)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of a director, officer, or employee, including any voluntary, seasonal, temporary, leased or independent contracted employee of the Company;

  o)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      (i)   any initial public offering undertaken and transacted by the Company, including all activities in connection therewith;

      (ii)   the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities and Exchange Commission promulgated thereunder, any other federal, state, local or provincial statute relating to securities, or any rules or regulations promulgated thereunder, all as amended, for any Wrongful Act actually or allegedly committed subsequent to such initial public offering, or

      (iii)   any equity or debt offering in excess of $50 million which is exempt from the registration requirements of the U.S. Securities and Exchange Commission; provided, however, that this subparagraph (iii) shall not apply if Insurer has agreed in writing to extend coverage for Wrongful Acts in connection with such offering, and the Insureds have paid the premium required by Insurer for such coverage extension; or

  p)  for that portion of Loss which is covered under any other Coverage Section of this Policy.

2.  Insurer shall not be liable to make any payment under this Coverage Section in connection with any Claim made under Insuring Clause 3, against the Company:

  a)  based upon, arising out of, directly or indirectly resulting from, in consequence of liability of, or in any way involving any written or express contract or agreement, entered into among and between the Company and another party, except and to the extent the Company would have been liable in the absence of such contract or agreement; or

  b)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      (i)   any actual or alleged infringement, misappropriation, or violation of copyright, patent, service marks, trade marks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services, or

      (ii)   any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised or developed by the Company,

provided, however that Exclusions a) and b), above, shall not apply to any such Claim brought directly, indirectly, or derivatively by one or more of the securities holders of the Company.

No Wrongful Act of one or more of the Insureds shall be imputed to any other Insureds for the purpose of determining the applicability of any of the above Exclusions.

D.   LIMIT OF LIABILITY AND RETENTIONS

1.  Insurer shall be liable to pay the percentage of Loss set forth in Item F. of the Declarations relating to this Coverage Section in excess of the amount of the applicable Retention up to the Limit of Liability under this Coverage Section, it being warranted that the remaining percentage of Loss shall be uninsured.

2.  The amount shown in Item C. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of Insurer under this Coverage Section.

3.  More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the following times:

  a)  the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Act is first made; or

  b)  the time at which the Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to have been made pursuant to Clause E.2., below.

4.  In the event a Claim is covered in part under more than one of the Insuring Clauses set forth in this Coverage Section, the Retentions set forth in Item C. of the Declarations relating to this Coverage Section shall be applied separately to that part of the Loss resulting from such Claim covered by such Insuring Clause. The sum of the Retentions so applied shall constitute the Retention applicable to such Claim. The total Retention, as finally determined, shall in no event exceed the largest single Retention applicable to such Claim.

5.  The Retention applicable to Insuring Clause 2, shall apply to Loss resulting from any Claim if indemnification by the Company is required by law or is legally permissible to the fullest extent permitted by law, regardless of whether or not actual indemnification by the Company is made, except and to the extent such indemnification is not made by the Company solely by reason of its financial insolvency.

6.  Payments of Loss by Insurer shall reduce the Limit of Liability under this Coverage Section. Insurer shall pay Loss in the order in which Loss is incurred. If Loss payable under Insuring Clause 1, and one or more of the other Insuring Clauses is incurred contemporaneously, Insurer shall first pay Loss payable under Insuring Clause 1. The Named Insured may elect through its most senior ranking Directors and Officers to decline or defer payment under Insuring Clause 2, or Insuring Clause 3. Insurer shall have no obligation to pay Loss after exhaustion of the Limit of Liability regardless of whether the Named Insured has declined or deferred payment.

7.  Insurer shall pay Costs, Charges and Expenses no more than once every 90 days.

E.  **NOTIFICATION**

1.  The Insureds shall, as a condition precedent to their rights to payment under this Coverage Section only, give Insurers notice in writing of any written Claim as soon as practicable, but in no event later than 60 days after the end of the Policy Period.

2.  If, during the Policy Period or the Discovery Period, any of the Insureds first becomes aware of a specific Wrongful Act and if the Insureds, during the Policy Period or the Discovery Period, if purchased, give written notice to Insurer as soon as practicable of:

    a)  the specific Wrongful Act, and

    b)  the consequences which have resulted or may result therefrom, and

    c)  the circumstances by which the Insureds first become aware thereof,

    then any Claim made subsequently arising out of such Wrongful Act shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was first given to Insurer.

3.  Notice to Insurer shall be given to the firm shown under Item G. of the Declarations for this Policy.

25

## FIDUCIARY COVERAGE SECTION

In consideration of the payment of premium, in reliance on the statements in the Application and subject to all of the provisions of this Policy and this Coverage Section, Insurer and the Assureds agree as follows.

**A.    INSURING CLAUSE**

Insurer shall pay on behalf of the Insureds **Loss** resulting from any **Claim** first made during the Policy Period for a **Wrongful Act**.

**B.    DEFINITIONS**

The following terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated.  Other terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated in Clause B. of the General Terms and Conditions section of this Policy.

1.    **Administration** means giving advice to employees or effecting enrollment, termination or cancellation of employees under any of the **Benefit Plans**.

2.    **Insureds** means:

    a)    the **Sponsor Organization**,

    b)    any **Benefit Plans**,

    c)    any **InsuredPersons**; and

    d)    any other persons or organizations who was, now are, or shall be acting as a plan administrator of any of the **Benefit Plans** at the written request and consent of the **Sponsor Organization**.

3.    **Insured Persons** means:

    a)    any persons who were, now are, or shall be serving as a trustee, director, officer or employee of the **Sponsor Company** or of any of the **Benefit Plans**,

    b)    any persons who were, now are, or shall be serving as a fiduciary of any of the **Benefit Plans**, and

    c)    any persons for whose **Wrongful Acts** any of the **Insureds** are legally responsible,

including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

4.    **Insured Plan** means any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for employees of the **Sponsor Company**.

5.    **Benefit Plans** means:

    a)    any **Sponsored Plan**, and

    b)    any **Insured Plan**,

established before or after the inception of this Policy.

6.    **Claim** means:

    a)    any written or oral demand for damages or other relief against any of the **Insureds**, and

    b)    any judicial, administrative or arbitration proceeding initiated against any of the **Insureds** in which they may be subjected to a binding adjudication of liability for damages or other relief, including:

        (i)    any proceeding or investigation brought by the U.S. Department of Labor, the Pension Benefit Guaranty Corporation or any similar federal, state or local governmental body, and

        (ii)    any appeal therefrom.

7.    **Continuity Date** means the date set forth in Item C. of the Declarations relating to this Coverage Section.

8.    **Costs, Charges and Expenses** means reasonable and necessary legal fees and expenses incurred by the **Insureds** in defense of any **Claim** and cost of attachment or similar bonds, but shall not include:

    a)    salaries, wages, overhead or benefit expenses associated with officers or employees of any of the **Insureds**, or

    b)    any amounts incurred in defense of any **Claim** for which any other Insurer has a duty to defend.

9.    **Employee Benefit Plan** means any plan so defined by the Employee Retirement Income Security Act of 1974, as amended.

?.    **Interrelated Wrongful Acts** means more than one **Wrongful Act** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

11.    **Loss** means damages, settlements and **Costs, Charges and Expenses** incurred by any of the **Insureds**, but shall not include:

    a)    that portion of any multiplied damages awarded which exceeds the amount multiplied,

    b)    taxes, criminal or civil fines or penalties imposed by law, or

    c)    matters deemed uninsurable under the law pursuant to which this Policy shall be construed.

12. **Plan Termination** means the termination, suspension, merger or dissolution of any of the Benefit Plans.

13. **Pension Benefit Plan** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

14. **Sponsor Company** means the Company.

15. **Sponsored Plan** means:

   a) any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan which is operated by the Sponsor Company for the benefit of the employees of the Sponsor Company;

   b) any other plan, fund or program specifically included as a Sponsored Plan by endorsement to this Policy, and

   c) any other employee benefit plan or program not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, sponsored by the Sponsor Company for the benefit of the employees of the Sponsor Company, including any employee stock ownership plan;

   provided, however, that the Sponsored Plan shall not include any multi-employer plan, as defined in the Employee Retirement Income Security Act of 1974, as amended.

16. **Welfare Benefit Plan** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

17. **Wrongful Act** means:

   a) with respect to a Sponsored Plan:

      (i) any actual or alleged breach of the responsibilities, obligations or duties imposed upon fiduciaries of the Sponsored Plan by the Employee Retirement Income Security Act of 1974, as amended, or by similar statutory or common law;

      (ii) any other matter claimed against the Sponsor Company or any of the Insured Persons solely because of the service of the Sponsor Company or any of the Insured Persons as a fiduciary of any Sponsored Plan, and

      (iii) any actual or alleged act, error or omission in the Administration of any Sponsored Plan, and

   b) with respect to an Insured Plan, any act, error or omission in the Administration of such Insured Plan.

## EXCLUSIONS

1. Insurers shall not be liable to make any payment under this Coverage Section in connection with any Claim:

   a) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, the failure to comply with any law governing workers' compensation, unemployment, social security or disability benefits or any similar law;

   b) based upon, arising out of, directly or indirectly resulting from, or in consequence of the liability of others assumed by any of the Insureds under any contract or agreement, either oral or writing, except in accordance with the agreement, or declaration of trust pursuant to which any of the Benefit Plans was established unless any of the Insureds would have been liable in the absence of such assumption;

   c) for actual or alleged libel, slander, defamation, bodily injury, sickness, disease, death, false imprisonment, assault, battery, invasion of privacy, or damage to or destruction of tangible property, including loss of use thereof;

   d) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

      (i) any Wrongful Act or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period under any other similar insurance policy, or

      (ii) any other Wrongful Act, wherever occurring, which, together with a Wrongful Act which has been the subject of such prior notice, would constitute Interrelated Wrongful Acts;

   e) to the extent it is insured under any other existing valid policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any Loss in connection with such Claim is collectible or recoverable under such other policy; provided, however, that this exclusion shall not apply to the amount of Loss which is in excess of the amount of any deductible and the limit of liability of such other policy where such Claim is otherwise covered by this Coverage Section;

   f) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, actual or alleged seepage, pollution or contamination of any kind;

   g) based upon, arising out of, directly or indirectly resulting from in consequence of, or in any way involving, any Wrongful Act actually or allegedly committed subsequent to a Plan Termination; provided, however, this exclusion shall only apply to those Benefit Plans which have been the subject of the Plan Termination;

   h) brought about or contributed to by any dishonest, fraudulent or criminal act or omission of, or any personal profit or advantage gained by, any of the Insureds to which they are not legally entitled, as determined by a judgment or other final adjudication;

   i) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any employment or employment-related matters; provided, however, this exclusion shall not apply to any Claim where such employment or employment-related matters involve actual or alleged violations of the Employee Retirement Income Security Act of 1974, as amended;

FID-2

27

j)      against any Subsidiary or any of the insured Persons of a Subsidiary based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

     (i)      any Wrongful Act occurring prior to the date such entity became a Subsidiary or subsequent to the date such entity ceased to be a Subsidiary, or

     (ii)      any Wrongful Act occurring while such entity was a Subsidiary which, together with a Wrongful Act occurring prior to the date such entity became a Subsidiary would constitute Interrelated Wrongful Acts;

k)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act actually or allegedly committed subsequent to a Takeover;

l)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

     (i)      any prior and/or pending litigation as of the Continuity Date, or

     (ii)      any fact, circumstance, situation, transaction or event underlying or alleged in such litigation,

     regardless of the legal theory upon which such Claim is predicated;

m)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any Wrongful Act which any of the Insureds had knowledge of prior to the Continuity Date where such Insureds had reason to believe at the time that such known Wrongful Act could reasonably be expected to give rise to such Claim; or

n)      for that portion of Loss which is covered under any other Coverage Section of this Policy.

2.      Insurers shall not be liable to make any payment under this Coverage Section, other than Costs, Charges and Expenses, in connection with any Claim:

     a)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or attempted reversion or payment of assets of any of the Benefit Plans to the Sponsor Company, or to any successor or assign of the Sponsor Company;

     b)      which constitutes fines or penalties or the multiple portion of any multiplied damage award, other than the five percent or less, or the twenty percent or less, civil penalties imposed upon any of the Insureds as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

     c)      based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, the failure to collect from employers contributions owed to any of the Benefit Plans, unless the failure is due to the negligence of any of the Insureds; or

     d)      which constitutes benefits due to or to become due under the terms of any of the Benefit Plans, unless and to the extent that:

     (i)      the Insured is a natural person and the benefits are payable by such Insured as a personal obligation, and

     (ii)      recovery for the benefits is based upon a covered Wrongful Act.

No Wrongful Act of one or more of the Insureds shall be imputed to any other Insureds for the purpose of determining the applicability of any of the above Exclusions.

**D.**      **LIMIT OF LIABILITY AND RETENTION**

1.      Insurer shall be liable to pay the percentage of Loss set forth in Item F. of the Declarations relating to this Coverage Section in excess of the amount of the Retention up to the Limit of Liability under this Coverage Section, it being warranted that the remaining percentage of Loss shall be uninsured.

2.      The amount shown in Item C. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of Insurer under this Coverage Section.

3.      More than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the following times:

     a)      the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made, or

     b)      the time at which the Claim involving the same Wrongful Acts or Interrelated Wrongful Acts shall be deemed to have been made pursuant to Clause F.2., below.

4.      Payment of Loss by Insurer shall reduce the Limit of Liability under this Coverage Section.

5.      Insurer shall pay Costs, Charges or Expenses no more than once every 90 days.

**E.**      **WAIVER OF RECOURSE**

Insurer shall have no right of recourse against any of the Insureds with respect to any Claim if this Coverage Section has been purchased by any of the Insureds other than any of the Benefit Plans.

**F.**      **NOTIFICATION**

The Insureds shall, as a condition precedent to their rights to payment under this Coverage Section, give Insurer notice in writing of any written Claim as soon as practicable, but in no event later than 60 days after the end of the Policy Period.

2.  If, during the Policy Period, any of the Insureds ...... becomes aware of a specific Wrongful Act and if the Insureds, during the Policy Period, given written notice to Insurer as soon as practicable of:

    a)  the specific Wrongful Act, and

    b)  the consequences which have resulted or may result therefrom, and

    c)  the circumstances by which the Insureds first become aware thereof,

    then any **Claim** made subsequently arising out of such Wrongful Act shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was first given to Insurer.

3.  Notice to Insurer shall be given to the firm shown under Item G. of the Declarations for this Policy.

## CRIME COVERAGE SECTION

In consideration of the payment of premium, in reliance on the statements in the Application and subject to all of the provisions of this Policy and this Coverage Section, Insurer and the Insureds agree as follows.

A.   **INSURING CLAUSES**

1.   **Employee Theft Coverage**

Insurer shall pay direct losses of Money, Securities and other property caused by Theft or forgery by any identifiable Employee of the Company acting alone or in collusion with others.

2.   **Employee Benefit Plan Coverage**

In the event Employee Benefit Plan coverage is designated in Item C. of the Declarations relating to this Coverage Section, Insurer shall pay direct losses for Money, Securities and other property sustained or discovered by such Employee Benefit Plan and caused by a fraudulent or dishonest act or acts committed by an Employee of any of the Insureds acting alone or in collusion with others.

3.   **Premises Coverage**

Insurer shall pay direct losses caused by the actual destruction, disappearance, wrongful abstraction or Computer Theft of Money and Securities within or from the Premises, or night depository chute or safe maintained by a bank or trust company.

Coverage under this Insuring Clause shall also include:

a)   loss of or damage to other property by actual or attempted Robbery within the Premises,

b)   loss of or damage to property contained within any safe which results from actual or attempted Safe Burglary within the Premises,

c)   damage to a locked safe, cash drawer, cash box or cash register within the Premises by actual or attempted felonious entry or loss by felonious abstraction of such container from within the Premises, and

d)   damage to the Premises resulting from a covered Safe Burglary or Robbery.

**Transit Coverage**

Insurer shall pay direct losses caused by the actual destruction, disappearance or wrongful abstraction of Money and Securities outside the Premises, while being conveyed by the Company, a partner, an Employee, an armored motor vehicle company or any other person duly authorized by the Company to have custody thereof or while temporarily within the home of the Company, a partner, an Employee or such other person.

Coverage under this Insuring Clause shall also include:

a)   loss of or damage to other property by actual or attempted Robbery outside the Premises while the property is being conveyed by the Company, a partner, an Employee or an armored motor vehicle company, and

b)   loss by Theft of such property while temporarily within the home of the Company, a partner or an Employee.

5.   **Depositors Forgery Coverage**

Insurer shall pay direct losses caused by forgery or alteration of, on or in any check, draft promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by, or drawn upon the Company, or made or drawn by one acting as agent of the Company, or purporting to have been made or drawn as set forth above, including:

a)   any check or draft made or drawn in the name of the Company payable to a fictitious payee and endorsed in the name of the fictitious payee,

b)   any check or draft procured in a face-to-face transaction with the Company or with one acting as agent of the Company by anyone impersonating another and made or drawn payable to the one impersonated and endorsed by anyone other than the one impersonated, and

c)   any payroll check, payroll draft or payroll order made or drawn by the Company payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority of the payee.

For purpose of this Insuring Clause, mechanically-reproduced facsimile signatures shall be treated the same as handwritten signatures.

If the Company or the bank of deposit of the Company, at the request of the Company, shall refuse to pay any of the foregoing instruments made or drawn as set forth alleging that the instruments are forged or altered, and this refusal shall result in suit being brought against the Company or bank to enforce payment and Insurer shall give their written consent to the defense of the suit, then any reasonable attorney's fees, court costs or similar legal expenses incurred and paid by the Company or bank in defense shall be considered a loss under this Insuring Clause, and the liability of Insurer for such loss shall be in addition to any other liability under this Insuring Clause.

If, at the request of the Company, Insurer waives any rights they may have against the bank upon which the instrument was drawn, the Company and the bank shall assign to Insurer all of their rights against any other person, firm or corporation.

CRI-1

30

**DEFINITIONS**

The following terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated. Other terms, whenever used in this Coverage Section in boldface type, shall have the meanings indicated in Clause B. of the General Terms and Conditions section of this Certificate.

1.  **Insureds** means the Company and any Employee Benefit Plan (if applicable).

2.  **Computer Theft** means the intentional taking of Money or Securities through use of a computer located at the Premises or elsewhere.

3.  **Employee** means, respectively, one or more persons while in the regular service of the Company in the ordinary course of the business of the Company during the Policy Period and whom the Company compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, and shall also mean:

    a)  any non-compensated officer of the Company,

    b)  any ex-Employee for a period not exceeding thirty days following termination of such person's services,

    c)  any director or trustee of the Company while performing acts within the scope of the usual duties of an Employee,

    d)  any individual or individuals assigned to perform Employee duties for the Company, within the Premises, by any agency furnishing temporary personnel on a contingent or part-time basis; provided, however, that this Coverage Section does not cover any loss caused by any such individual if such loss is also covered by an insurance or suretyship held by the agency furnishing such temporary personnel to the Company, and with respect to Insuring Clause 2.,

    e)  any natural persons while in the service of any Employee Benefit Plan as fiduciary, trustee, administrator, officer or employee and any other natural person required to be bonded by Title I of the Employee Retirement Income Security Act of 1974, as amended.

4.  **Employee Benefit Plan** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended, sponsored or established by the Company.

5.  **Money** means only currency, coin, bank notes and bullion.

6.  **Premises** means that portion of the interior of any building occupied by the Company in conducting its business.

7.  **Robbery** means the unlawful taking of insured property from the Company, a partner, an Employee or any other person authorized by the Company to have custody of the property by violence, threat of violence or other overt felonious act committed in the presence and cognizance of such person, except any person acting as a watchman, porter or janitor.

8.  **Safe Burglary** means the felonious abstracting of insured property from within a vault or safe located within the Premises by a person making felonious entry into such vault or safe and any vault containing the safe, when all doors thereof are duly closed and locked by at least one combination or time lock; provided, however, that such entry shall be made by actual force and violence, demonstrated by visible marks made by tools, electricity, gas or other chemicals upon the exterior of:

    a)  a door or doors of such vault or safe and any vault containing the safe, if entry is made through such doors, or

    b)  the top, bottom or walls of such vault or safe and any vault containing the safe through which entry is made, if not made through which entry is made, if not made through such doors.

9.  **Securities** means all negotiable and non-negotiable instruments or contracts representing either Money or other property, including revenue and other stamps in current use, tokens and tickets, but not including Money.

10. **Theft** means the unlawful taking of Money, Securities or other property to the deprivation of the Company.

**C.  EXCLUSIONS**

1.  Insurer shall not be liable to make any payment under this Coverage Section in connection with:

    a)  loss due to war (whether or not declared), civil war, insurrection, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

    b)  loss caused or contributed to by Theft or any other fraudulent, dishonest or criminal act committed by a partner of any of the Insureds, whether acting alone or in collusion with others;

    c)  loss involving the cost of reproducing any information contained in any lost or damaged manuscripts, records, accounts, microfilms, tapes or other records;

    d)  any expenses incurred by any of the Insureds in establishing the existence or the amount of any loss covered under this Coverage Section;

    e)  loss of income not realized by any of the Insureds as the result of any loss covered under this Coverage Section;

    f)  loss of trade secrets, confidential processing methods or other confidential information of any kind;

    g)  costs, charges or expenses incurred or paid by any of the Insureds in prosecuting or defending any legal proceeding or claim, other than legal proceedings covered under Insuring Clause 5., whether or not such proceeding results or would result in a loss recoverable under this Coverage Section;

    h)  loss unless reported and proved in accordance with Clause I. of this Coverage Section;

l)     loss unless discovered and written notice thereof is given to Insurer within:

       (i)     sixty days following termination of this Coverage Section in its entirety, or

       (ii)     one year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the Parent Company; or

j)     loss sustained by any of the Insureds unless discovered and written notice of such loss is given to Insurer pursuant to Clause J. of this Coverage Section but in no event later than within sixty days following termination of this Coverage Section as to such Insureds.

2.     Insurer shall not be liable to make any payment under Insuring Clauses 1. and 2. of this Coverage Section in connection with:

a)     loss caused by an Employee not engaged in the regular service of any of the Insureds;

b)     loss caused by an Employee if an elected or appointed officer of any of the Insureds possesses knowledge of any act or acts of Theft, fraud or dishonesty committed by such Employee:

       (i)     in the service of any of the Insureds or otherwise during the term of employment by any of the Insureds, or

       (ii)     prior to employment by any of the Insureds provided that such conduct involved Money, Securities or other property valued at $2,500 or more;

c)     loss caused by any broker, factor commission merchant, consignee, contractor or other agent or representative of the same general character;

d)     loss caused, directly or indirectly, from trading, whether or not in the name of any of the Insureds and whether or not in a genuine or fictitious account; or

e)     loss or that part of loss the proof of which involves in any manner:

       (i)     a profit and loss computation or comparison, or

       (ii)     a comparison of inventory records with an actual physical count; provided, however, that where any of the Insureds establishes wholly apart from such comparison that it has sustained a loss covered under Insuring Clauses 1. or 2., then it may offer its inventory records and actual physical count of inventory in support of the amount of loss claimed.

Insurer shall not be liable to make any payment under Insuring Clauses 3. and 4. of this Coverage Section in connection with loss or damage:

a)     due to Theft or any other fraudulent, dishonest or criminal act (other than actual or attempted Safe Burglary or Robbery) by any Employee, director, trustee or authorized representative of the Company, whether acting alone or in collusion with others;

b)     due to fire, except:

       (i)     loss of or damage to Money or Securities, or

       (ii)     damage to any safe or vault caused by the application of fire thereto for the purpose of Safe Burglary;

c)     due to the giving or surrendering of Money or Securities in any exchange or purchase;

d)     of or to manuscripts, records, accounts, microfilm or tapes;

e)     due to forgery;

f)     of or to Money, Securities or other property while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company;

g)     of or to Money, Securities or other property while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle or any person who is duly authorized by the Company to have custody of the property unless the loss is in excess of the amount recovered or received by the Company under:

       (i)     the contract of the Company, if any, with, or insurance carried by, any of the foregoing, or

       (ii)     any other insurance or indemnity in force which would cover the loss in whole or in part, in which case this Coverage Section shall cover only such excess;

h)     due to nuclear reaction, nuclear radiation or radioactive contamination or to any act or condition incident to any of the foregoing; or

i)     of or to Money, Securities or other property as a result of kidnap/ransom or other extortion payments (as distinguished from the proceeds of a Robbery) surrendered to any person as a result of a threat to do:

       (i)     bodily injury to any person, or

       (ii)     damage to the Premises or other property owned by any of the Company or held by the Company in any capacity.

Insurer shall not be liable under Insuring Clause 5. of this Coverage Section in connection with any loss through forgery or alteration of, on or in:

a)     any instrument, if such forgery or alteration is committed by any Employee or by any person in collusion with any Employee; or

b)     any registered or coupon obligations issued or purported to have been issued by the Company or any coupons attached thereto or detached therefrom.

LIMIT OF LIABILITY

The amount shown in Item C. of the Declarations relating to this Coverage Section shall be the maximum aggregate Limit of Liability of Insurer under all Insuring Clauses for this Coverage Section:

1. for any loss or losses applicable to Insuring Clause 1, caused by any Employee or in which any Employee is concerned or implicated, either resulting from a single act or any number of such acts, regardless of when, during the Policy Period or prior thereto, such acts occurred,

2. for any loss or losses applicable to Insuring Clauses 3, or 4, resulting from any one casualty or event (all losses resulting from an actual or attempted fraudulent or dishonest act or series of related acts at the Premises or whether committed by one or more persons, shall be deemed to be one casualty or event), and

3. for any loss or losses applicable to Insuring Clause 5, caused by forgery or alteration committed by any person or in which such person is concerned or implicated, either resulting from a single act or any number of such acts, regardless of the number of instruments involved or when, during the Policy Period or prior thereto, such acts occurred.

Regardless of the number of years this Coverage Section shall continue in force, and the number of premiums which shall be payable or paid or any other circumstances whatsoever, Insurer's liability under this Coverage Section with respect to any loss or losses shall not be cumulative from year to year or from period to period. When there is more than one Insured, Insurer's aggregate liability for loss or losses sustained by any or all of them shall not exceed the amount for which the Insurer would be liable if all losses were sustained by any one of the Insureds.

E. DEDUCTIBLE

1. No Superseded Insurance Carrier Involved

From each loss sustained or discovered by any of the Insureds after deducting all recoveries (except insurance or suretyship held by any of the Insureds or by Insurer for their benefit) on account thereof made prior to payment shall be deducted the amount(s) specified in Item C. of the Declarations relating to this Coverage Section. No deductible shall apply to loss sustained or discovered by any Employee Benefit Plan.

2. Superseded Insurance Carrier Involved

Should any loss be discovered which is partly recoverable under this Coverage Section, and partly recoverable under a prior bond or policy containing a deductible amount, the deductible amount specified in Item C. of the Declarations relating to this Coverage Section shall be reduced by the deductible amount applied to such loss by the superseded insurance carrier.

F. OWNERSHIP

Insurer' liability under this Coverage Section shall apply only to Money, Securities and other property owned by any of the Insureds or for which the Insureds are legally liable, or held by any of the Insureds in any capacity, whether or not the Insureds are liable; provided, however, that Insurer shall not be liable for damage to the Premises unless any of the Insureds are the owner or is liable for such damage.

G. JOINT INSURED

Except as provided in Clause O. of this Coverage Section, only the Parent Company shall have the right to claim, adjust, receive or enforce payment of any loss and shall be deemed to be the sole agent of the others for such purposes and for the giving and receiving of any notice or proof required to be given by the terms hereof and for the purpose of effecting or accepting amendments to or termination of this Coverage Section. Each and every other of the Insureds shall be conclusively deemed to have consented and agreed that none of them shall have any direct beneficiary interest herein or any right of action hereon shall not be assignable; but knowledge possessed or discovery made by any of the Insureds or by any partner or officer of the Parent Company shall constitute knowledge possessed or discovery made by all of the Insureds for the purposes of this Coverage Section. All losses and other payments, if any, payable by Insurer, shall be payable to the Parent Company, without regard to such obligations of any of the Insureds to others, and Insurer shall not be responsible for the proper application of any payment made. Insurer shall not be liable for loss sustained by one of the Insureds to the advantage of any other of the Insureds. If Insurer shall agree to and shall make payment to any of the Insureds other than the Parent Company, such payment shall be treated as though made to the Parent Company.

H. OTHER INSURANCE

If any of the Insureds or any other party in interest in any loss covered by this Coverage Section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this Coverage Section, then this Coverage Section shall be null and void to the extent of the amount of such other bond, indemnity or insurance; but this Coverage Section shall cover such loss, subject to its exclusions, conditions and other terms, only to the extent of the amount of such loss in excess of the amount of such other bond, indemnity or insurance.

I. LIABILITY FOR PRIOR LOSSES

Insurer' liability for loss sustained prior to:

1. the effective date of this Coverage Section, or

2. the effective date additional Insureds or coverages are subsequently added,

is subject to the following:

a) any of the Insureds or some predecessor in interest such Insureds carried some other bond or policy (other than a fidelity bond or policy, with respect to such loss under Insuring Clause 5, which, at the time such loss was sustained, afforded on or at the Premises at which the loss was sustained or on the person or persons (whether Employee of the Company or not) causing the loss, some or all of the coverage of the Insuring Clauses of this Coverage Section applicable to the loss,

b) such prior coverage and the right of claim for loss thereunder continued under the same or some superseding bond or policy without interruption from the time the loss was sustained until the date specified in 1. and 2., above, and

c) the loss shall have been discovered after the expiration of the time for discovery of such loss under the last such bond or policy.

Insurer' liability with respect to such loss shall not exceed the amount which would have been recoverable under the coverage in force at the time the loss was sustained, or the amount recoverable under the Insuring Clause of this Coverage Section applicable to the loss, whichever is less.

J.   NOTICE, PROOF, AND LEGAL PROCEEDINGS

Upon knowledge or discovery by a proprietor, partner or officer of the Company of loss or of any occurrence which may become a loss, written notice shall be given at the earliest practicable moment, and in no event later than sixty days after such discovery. Within four months after such discovery, the Insureds shall furnish to Insurer affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss, except that any legal proceedings to recover hereunder on account of any judgment in such suit shall become final. Proof of loss under Insuring Clause 5, shall include the instrument which is the basis of claim for the loss; but if it shall be impossible to file the instrument, the affidavit of the Company or the bank of deposit of the Company setting forth the amount and cause of the loss shall be accepted instead. If any limitation embodied herein is prohibited by any law controlling the construction thereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

At Insurer's request, any of the Insureds shall submit to examination by Insurer, under oath, if required, and produce for Insurer's examination all pertinent records at such reasonable times and places as Insurer shall designate, and shall cooperate with Insurer in all matters pertaining to any loss or claim.

K.   VALUATION

In no event shall Insurer be liable for more than:

1.   the actual market value of lost, damaged or destroyed Securities at the close of business on the business day immediately preceding the day on which the loss is discovered, or for more than the actual cost of replacing the Securities, whichever is less;

2.   the cost of blank books, pages, tapes or other blank materials to replace lost or damaged books of account or other records;

3.   the actual cash value at the time of other loss, damaged or destroyed property for more than the actual cost of repairing or replacing the property with property of similar quality and value, whichever is less; or

4.   the United States dollar value of a foreign currency based on the free currency rate of exchange in effect on the day any loss involving foreign currency is discovered.

L.   RECOVERIES

If any of the Insureds shall sustain any loss covered by this Coverage Section, all recoveries (except from suretyship, insurance, reinsurance or indemnity taken by or for the benefit of Insurer) made after the loss, less the actual cost of recovery, shall be distributed as follows:

if the loss is not subject to a deductible, the Insureds shall be fully reimbursed from such recoveries for the amount of the loss which exceeds the amount of coverage provided by this Coverage Section and any balance shall be applied to the reimbursement of Insurer, or

2.   If the loss is subject to a deductible, the Insureds shall be reimbursed from such recoveries for any loss which exceeds the amount of coverage provided by this Coverage Section less the deductible amount, any balance shall be applied to reimbursement of Insurer to the extent of their loss and any remainder paid to the Insureds. If there is no excess loss the total recoveries shall be distributed first in reimbursement to Insurer to the extent of their loss and any remainder paid to the Insureds.

M.   KNOWLEDGE OF PRIOR THEFT

For the purposes of this Coverage Section and the exclusions contained in Clause C, knowledge possessed by any of the Insureds means knowledge possessed by a partner, director or an elected or appointed officer who is aware of the employment of a person and that person's prior acts of Theft, fraud or dishonesty.

N.   ADDITIONAL INSUREDS

At the sole discretion of Insurer, coverage may be extended to any individual upon written application by any of the Insureds and written consent by Insurer.

O.   EMPLOYEE BENEFIT PLANS

For the purposes of coverage for any Employee Benefit Plan, the words "sixty days" are deleted from Clause C, wherever they appear and the words "one year" are substituted in their place.

In compliance with Title 1 of the Employee Retirement Income Security Act of 1974, as amended, payment by Insurer under this Coverage Section to the Parent Company shall be held by the Parent Company for the use and benefit of any Employee Benefit Plan sustaining such loss. If such payment is in excess of the amount of coverage required by such Act for such Employee Benefit Plan, such excess shall be held for the use and benefit of any other Employee Benefit Plan should such Employee Benefits Plan also discover loss recoverable hereunder. If Money, Securities and other property of two or more Employee Benefit Plans named above are commingled, recovery hereunder for loss of such Money, Securities and other property shall be shared by such Employee Benefit Plan on a pro rata basis in accordance with the amount of coverage each such Employee Benefit Plan is required to carry by such Act.

P.   TERMINATION PROVISIONS

1.   Termination as to any Employee

This Coverage Section shall terminate as to any Employee:

a)   immediately upon discovery by any of the Insureds, any partner of the Company or any elected or appointed officer of the Company (not in collusion with such Employee) of any act of Theft or other fraudulent or dishonest act by the Employee, without prejudice to the loss of any property then being conveyed by the Employee outside the Premises, or

b)   twenty days after the receipt by the Parent Company of a written notice of termination from Insurer, whichever first occurs.

CRI-5

34

2.     Termination of this Coverage Section or Insuring Clauses

This Coverage Section shall terminate in its entirety:

      a)    thirty days after the receipt by the Parent Company of a written notice of termination from Insurer;

      b)    upon receipt by Insurer of a written notice of termination from the Parent Company;

      c)    at such other time as may be agreed upon by Insurer and the Parent Company;

      d)    upon the voluntary liquidation or dissolution of the Company;

      e)    upon the appointment of:

          (i)    a receiver, trustee, or other fiduciary of the property of the Company;

          (ii)    a committee for the dissolution thereof; or

      f)    as to any of the Insureds other than the Company upon the appointment of:

          (i)    a receiver, trustee or other fiduciary of the property of any such Insureds, or

          (ii)    a committee for the dissolution thereof;

          whichever occurs first.

Any Insuring Clause or coverage for any of the Insureds other than the Company shall terminate thirty days after receipt by the Parent Company of a written notice of termination from Insurer or upon the request of the Parent Company.

Q.     TERMINATION OF PRIOR BONDS OR POLICIES

The taking effect of this Coverage Section shall terminate, if not already terminated, all previous liability of Insurer to any of the Insureds under any other bonds or policies. By reason of the issuance of this Coverage Section the prior bonds or policies shall not cover any loss not discovered and notified to Insurer prior to the effective date of this Coverage Section.

35

| Policy No: | BMI20003549 | Endorsement No: 1 |
|---|---|---|
| Issued to: | Westwave Communications, Inc. | |
| Effective Date: | October 1, 2002 | |

### DELETE ARBITRATION PROVISION

IN CONSIDERATION of the premium charged for this Policy, it is hereby understood and agreed that Clause K. **ARBITRATION** of the General Terms and Conditions Coverage Section is deleted in its entirety.

ALL OTHER TERMS, conditions and limitations of said Policy shall remain unchanged.

36

| | | |
|---|---|---|
| Policy No: | BMI20003549 | Endorsement No: 2 |
| Issued to: | Westwave Communications, Inc. | |
| Effective Date: | October 1, 2002 | |

## PROFESSIONAL SERVICES ERRORS & OMISSIONS EXCLUSION
### (Carve Back Wording)

IN CONSIDERATION of the premium charged for this Policy, it is hereby understood and agreed that Clause C. 1. **EXCLUSIONS** of the Directors & Officers and Company Coverage Section is amended by the addition of the following:

n)     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way relating to any act, error or omission in connection with performance of any professional services by or on behalf of any of the **Insureds** for the benefit of any other entity or person; provided, however, this exclusion shall not apply to any such **Claim** brought directly, derivatively or otherwise by one or more securities holders of the **Company**.

ALL OTHER TERMS, conditions and limitations of said Policy shall remain unchanged.

37

1/31/08  2.35pm

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ILLINOIS UNION INSURANCE COMPANY,
and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JON W. BAYLESS and GARY J. MORGENTHALER,
as Trustees in Dissolution for WESTWAVE COMMUNCATIONS,
INC. *a dissolved Delaware Corporation (S.L.)*

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco County Superior Court<br>400 McAllister Street<br>San Francisco, CA  94102 | CASE NUMBER<br>*(Número del Caso):*  **CGC08-471381** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Philip L. Pillsbury, Jr., Vedica Puri, Eric K. Larson, Pillsbury & Levinson, LLP, The Transamerica Pyramid,
600 Montgomery Street, 31st Floor, San Francisco, CA  94111, (415) 433-8000

| DATE: **JAN 2 5 2008** | Clerk, by | **CRISTINA E. BAUTISTA** | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ]  as an individual defendant.
2. [ ]  as the person sued under the fictitious name of *(specify):*
3. [X]  on behalf of *(specify):*  Illinois Union Insurance Company

under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)        [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)        [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ]  by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.   www.USCourtForms.com |
|---|---|---|

38

Exhibit 2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Philip L. Pillsbury, Jr. (#72261)/Vedica Puri (#176252) / Eric K. Larson (#142791) Pillsbury & Levinson, The Transamerica Pyramid 600 Montgomery Street, 31st Floor, San Francisco, CA 94111 TELEPHONE NO.: (415) 433-8000      FAX NO.: (415) 433-4816 | **ENDORSED** **F I L E D** San Francisco County Superior Court |
| ATTORNEY FOR *(Name):* Jon Bayless, Gary Morgenthaler Trustees in Dissolution for Westwave Communications, Inc. | JAN 2 5 2008 |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco STREET ADDRESS: 400 McAllister Street MAILING ADDRESS: CITY AND ZIP CODE: San Francisco, CA 94102 BRANCH NAME: | GORDON PARK-LI, Clerk BY: *FRISSIE ALONZO* Deputy Clerk |
| CASE NAME: Jon W. Bayless, et al. v. Illinois Union Insurance Co., et al. | |

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: CGC 08 - 471381 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE: DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Collections (09)
- [✓] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental /Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
   f. [ ] Substantial post-judgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [✓] monetary    b. [ ] nonmonetary; declaratory or injunctive relief    c. [✓] punitive

4. Number of causes of action *(specify):* two

5. This case [ ] is [✓] is not   a class action suit.

Date: January 25, 2008

Eric K. Larson
(TYPE OR PRINT NAME)                              ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.USCourtForms.com

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

CASE NUMBER: CGC-08-471381  JON W. BAYLESS VS. ILLINOIS INSURANCE COMPANY et

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

DATE:    JUN-27-2008

TIME:    9:00AM

PLACE:   Department 212
         400 McAllister Street
         San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

40